# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SBG MANAGEMENT SERVICES, INC.<br>610 Old York Road, Suite 375<br>Jenkintown, PA 19046<br><br>and<br><br>LINDLEY TOWER REALTY CO., LP<br>610 Old York Road, Suite 375<br>Jenkintown, PA 19046<br><br>Plaintiffs,<br><br>v.<br><br>TRISURA SPECIALITY INSURANCE COMPANY<br>210 Park Avenue, Suite 1400<br>Oklahoma City, OK 73102<br><br>Defendant. | CIVIL ACTION<br><br>NO.<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

AND NOW, come the Plaintiffs, SBG Management Services, Inc. and Lindley Tower Realty Co., LP (collectively, "SBG") and hereby file a Complaint against Trisura Specialty Insurance Company ("Trisura") and in support thereof, aver as follows:

## PRELIMINARY STATEMENT

1. SBG filed this suit to hold Trisura accountable for breach of contract and bad faith refusal to provide coverage, under a Trisura insurance policy, for a covered claim. On September 14, 2022, a partial collapse of the façade occurred at a property – a seven-story residential rental building – insured by Trisura located at 1220 Lindley Avenue, Philadelphia ("Building"). SBG promptly notified Trisura of the collapse and concomitant claim for coverage. Nearly a year

after receiving notice, Trisura denied coverage, relying on exclusions in the insurance policy. Trisura's breach of contract and bad faith were without reasonable basis in the policy or under the law.

2. SBG seeks a judgment for the monetary damages due and owing because of Trisura's breach of contract and bad faith, including compensatory and consequential damages, prejudgment interest, post-judgment interest, attorneys' fees and costs, and punitive damages arising from Trisura's bad faith conduct in its claims handling and denial of coverage.

## THE PARTIES

3. Plaintiff SBG Management Services, Inc. is a corporation organized and existing under the laws of the state of Delaware with its principal place of business located at 610 Old York Road, Suite 375, Jenkintown, PA 19046.

4. Plaintiff Lindley Tower Realty Co., LP is a limited partnership formed in Pennsylvania with its principal place of business located at 610 Old York Road, Suite 375, Jenkintown, PA 19046.  None of the members of Lindley Tower is a citizen of Oklahoma and none of the entities in Lindley's ownership "chain" whose citizenship is considered for diversity purposes is a citizen of Oklahoma.

5. On information and belief, Defendant Trisura is an Oklahoma corporation with a principal place of business located at 210 Park Avenue, Suite 1400, Oklahoma City, OK 73102-5636.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over this case under 28 U.S.C. § 1332(a) as SBG (including Lindley Tower) and Trisura are citizens of different states, or corporations organized under the laws of different states with principal places of business in

different states, and the amount in controversy is in excess of $75,000.

7. This Court has personal jurisdiction over Trisura because Trisura regularly does business in Pennsylvania and the cause of action arose out of Trisura's business dealings in Pennsylvania, including Trisura issuing an insurance policy to a Pennsylvania policyholder, and the Building is located in Pennsylvania.

8. Venue is proper in this District under 28 U.S.C. § 1391 (b) because the property that is the subject of this action (*i.e.*, the Building) is located in Philadelphia.

## FACTUAL BACKGROUND

**A.     The Trisura Policy**

9. Trisura sold a Commercial Property Insurance Policy number NCP-8000134-02, with a policy period of June 15, 2022 to June 15, 2023, with policy limits of $25,000,000 per occurrence ("the Policy").

10. SBG is an insured under the Policy.

11. The property located at 1220 Lindley Avenue, Philadelphia, PA 19141 (*i.e.*, the Building) is an insured location under the Policy.

12. The Policy states:

> We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

13. "Covered Property" includes the Building structure. *Id.*

14. The covered cause of loss under the Policy is identified as "Special."

15. Under the Special Form, there is coverage for "collapse" under the "Additional Coverage," stating:

> 1. For the purpose of this Additional Coverage, Collapse, abrupt collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part

of the building cannot be occupied for its intended purpose.

2. We will pay for direct physical loss or damage to Covered Property, caused by the abrupt collapse of a building or any part of a building that is insured under this Coverage Form or that contains Covered Property insured under this Coverage Form, if such collapse is caused by one or more of the following:

   a. Building decay that is hidden from view, unless the presence of such decay is known to an insured prior to collapse ….

16. The Policy does not define "abrupt."

17. The Policy does not define "decay."

18. The Policy does not define "hidden from view."

19. The September 14, 2022 collapse of the Building façade was caused by hidden decay.

20. The collapse of the Building façade was caused by a condition unknown to SBG.

21. The collapse of the Building façade is covered under the Policy.

*Business Income and Extra Expense Coverage*

22. The Policy provides Property and Business Income with Extra Expense coverage for the Building.

23. The Policy provides Business Income coverage:

    We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration".

24. "Business Income" is the "Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred" and "Continuing normal operating expenses incurred, including payroll."

25. "Suspension" is defined as:

    a. The slowdown or cessation of your business activities; or
    b. That a part or all of the described premises is rendered

       untenantable, if coverage for Business Income Including "Rental Value" or "Rental Value" applies.

26.   "Operations" is defined as:

   a. Your business activities occurring at the described premises; and

   b. The tenantability of the described premises, if coverage for Business Income Including "Rental Value" or "Rental Value" applies.

27.   "Period of restoration" is defined as:

   the period of time that:

   a. Begins:

   (1) 72 hours after the time of direct physical loss or damage for Business Income Coverage; or

   (2) Immediately after the time of direct physical loss or damage for Extra Expense Coverage;

   caused by or resulting from any Covered Cause of Loss at the described premises; and

   b. Ends on the earlier of:

   (1) The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

   (2) The date when business is resumed at a new permanent location.

28.   The Policy provides Extra Expense coverage:

   Extra Expense means necessary expenses you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property caused by or resulting from a Covered Cause of Loss.

### *Ordinance or Law Coverage*

29.   The Ordinance or Law Coverage states:

   **Application Of Coverage(s)**

   The Coverage(s) provided by this endorsement applies with respect to an ordinance or law that regulates the demolition, construction or repair of buildings, or establishes zoning or land use requirements at the described premises, subject to the following:

1. The requirements of the ordinance or law are in force at the time of loss.

* * *

2. The requirements of the ordinance or law are in force at the time of loss; or the ordinance or law is promulgated or revised after the loss but prior to commencement of reconstruction or repair and provided that such ordinance or law requires compliance as a condition precedent to obtaining a building permit or certificate of occupancy.

3. Coverage under this endorsement applies only in response to the minimum requirements of the ordinance or law.

* * *

4. Coverage under this endorsement applies only if:

    a. The building sustains only direct physical damage that is covered under this policy and as a result of such damage, you are required to comply with the ordinance or law; or

    b. The building sustains both direct physical damage that is covered under this policy and direct physical damage that is not covered under this policy, and as a result of the building damage in its entirety, you are required to comply with the ordinance or law.

   However, there is no coverage under this endorsement if the building sustains direct physical damage that is not covered under this policy, and such damage is the subject of the ordinance or law, even if the building has also sustained covered direct physical damage.

30. The Coverages available are:

    **1. Coverage A – Coverage For Loss To The Undamaged Portion Of The Building**

    With respect to the building that has sustained covered direct physical damage, we will pay under Coverage **A** for the loss in value of the undamaged portion of the building as a consequence of a requirement to comply with an ordinance or law that requires demolition of undamaged parts of the same building.

    Coverage **A** is included within the Limit Of Insurance applicable to such building as shown in the Declarations or addressed elsewhere in this policy. Coverage **A** does not increase the Limit of Insurance.

    **2. Coverage B – Demolition Cost Coverage**

    With respect to the building that has sustained covered direct

physical damage, we will pay the cost to demolish and clear the site of undamaged parts of the same building as a consequence of a requirement to comply with an ordinance or law that requires demolition of such undamaged property.

The Coinsurance Additional Condition does not apply to Demolition Cost Coverage.

### 3. Coverage C – Increased Cost Of Construction Coverage

**a.** With respect to the building that has sustained covered direct physical damage,

we will pay the increased cost to:

(1) Repair or reconstruct damaged portions of that building; and/or

(2) Reconstruct or remodel undamaged portions of that building, whether or not demolition is required;

when the increased cost is a consequence of a requirement to comply with the minimum standards of the ordinance or law.

* * *

**B.    The Loss and Trisura's Bad Faith**

31.   On September 14, 2022, a portion of the exterior façade of the Building collapsed.

32.   Prior to the collapse, the Building was regularly inspected by City of Philadelphia inspectors.

33.   Prior to the collapse, the Philadelphia Fire Department was regularly on-site at the Building.

34.   Following the collapse, SBG timely notified Trisura of the collapse.

35.   Following notice, Trisura retained Damian Moser, PE of Thornton Tomasetti to investigate the collapse and determine the cause.

36.   Mr. Moser issued a Partial Façade Collapse Evaluation dated November 21, 2022.

37.   Mr. Moser stated: "we attribute the partial façade collapse at 1220 Lindley Avenue to deterioration of the relieving plate at the seventh-floor window head, due to insufficient maintenance of the façade and roofing components over the life of the building."

38. On information and belief, prior to the collapse, the City of Philadelphia inspectors did not issue any violations related to deterioration of the 7th floor relieving plate or facade.

39. During the course of the handling of SBG's claim, Trisura requested permission to perform additional invasive testing. SBG granted permission, but Trisura never performed that testing.

40. Ten months after Mr. Moser issued his evaluation and nearly one year after the collapse, Trisura denied coverage in a September 11, 2023 letter. A true and correct copy of the 9/11/23 Letter is attached as Exhibit 1.

41. In the September 11, 2023 letter, Trisura stated: "The information obtained to date shows that the Insured's loss was caused by decay and deterioration that was fully visible and known to the Insured prior to the occurrence of the partial façade collapse." 9/11/23 Letter at 5.

42. Trisura relied on the assertion that an SBG employee saw a bulge on September 1, 2022, but Trisura ignores the fact that SBG immediately fenced off the area and engaged a qualified contractor to perform restoration work and the collapse occurred the day after the restoration proposal was signed.

43. In the September 11, 2023 letter, Trisura stated: "Please note that, as the Insured's claim is excluded under the Policy, it is the Insured's responsibility to use all reasonable means to save and preserve the Subject Property from further damage at and after the time of loss." 9/11/23 Letter at 5.

44. SBG repeatedly asked Trisura to reconsider its position and provide coverage; Trisura declined.

45. On June 11, 2024, the undersigned advised Trisura that the City of Philadelphia

11310796 v2

8

ordered the demolition of the Building and because the order was a direct result of Trisura's improper conduct and delay, it was responsible for the demolition and related costs.

46. Trisura denied any responsibility for the demolition and related costs.

47. On July 23, 2024, the City of Philadelphia filed an Emergency Motion for Permanent Injunction and Order to Vacate and Demolish the Building ("Emergency Motion").

48. On July 24, 2024, the undersigned provided Trisura's counsel with a copy of the Emergency Motion.

49. The Emergency Motion was granted and an injunction issued (by Order) on July 29, 2024.

50. On July 30, 2024, the undersigned provided Trisura's counsel with a copy of the Injunction Order referenced in paragraph 49 above.

51. SBG invited Trisura to participate in its dealings with the City of Philadelphia involving the Building; Trisura did not participate.

52. Trisura failed to meet with any representatives of the City of Philadelphia regarding the Building.

53. Trisura has not been to the Building since 2023.

54. Trisura's denial of coverage lacks both legal and factual support and is not supported by the language of the Policy it sold or longstanding case law in Pennsylvania.

**COUNT ONE**
**BREACH OF CONTRACT**

55. Paragraphs 1 through 54 are incorporated by reference.

56. The Policy constitutes a valid and enforceable contract between SBG and Trisura.

57. The Policy provides coverage for collapse from a hidden condition.

58. In the Policy, Trisura agreed to extend coverage to SBG and insure losses relating

to compliance with laws or ordinances.

59. SBG sustained an insured loss under the Policy and during the policy period.

60. The collapse occurred on September 14, 2022.

61. The collapse of the Building's façade is a covered loss ("Loss"). The demolition of the building is a covered loss.

62. The Loss is not excluded by the terms of the Policy.

63. SBG has suffered a covered Rental Loss under the terms of the Policy.

64. SBG paid all premiums due under the Policy.

65. All other conditions prevalent to coverage have been fulfilled or covered by Trisura.

66. SBG provided prompt notice of the Loss.

67. Trisura denied coverage for the Loss on September 11, 2023.

68. Trisura denied coverage for the Loss nearly a year after it received notice.

69. As a direct and proximate result of Trisura's breaches, SBG has been deprived of the benefits of insurance coverage to which SBG was entitled and has SBG suffered, and continues to suffer, damages as a result, including direct and consequential damages.

WHEREFORE, SBG demands judgment in its favor as to Count I as follows:

a) The entry of a judgment in an amount in excess of $75,000 and requiring Trisura to pay SBG all monetary damages which were caused by Trisura's breaches, including, without limitation, compensatory damages, consequential damages, prejudgment interest, post-judgment interest, and attorneys' fees and costs;

b) The award of such additional relief as the Court deems just and appropriate.

## COUNT TWO
## BAD FAITH UNDER PENNSYLVANIA LAW

70. Paragraphs 1 through 69 are incorporated by reference.

71. Trisura has acted in bad faith in its pre-denial conduct, its post-denial conduct, and its denial of coverage, which has caused and continues to cause SBG severe, and potentially irreversible, financial harm.

72. Trisura has acted in bad faith with respect to SBG in at least the following ways:

    a. Failing to deal fairly with SBG and give equal consideration in all matters to SBG's interests by, *inter alia*, failing to timely advise SBG of its coverage position, and relying on an obviously incorrect legal position to support its denial of coverage;

    b. Failing to provide its coverage position as to the Loss for nearly a year;

    c. Relying on an unreasonable, frivolous, or unsupportable denial of policy benefits as all of the relevant evidence shows that the façade collapse was caused by building decay that was hidden from view;

    d. Failing to promptly provide a "reasonable explanation" of its denial of the claim;

    e. Misrepresenting pertinent facts or policy provisions relating to the coverage at issue;

    f. Compelling SBG to commence litigation to recover amounts due under the Policy; and

    g. Such other bad faith conduct as will be revealed during the course of discovery in this action.

73. In all the instances set forth above, Trisura's persistent and systematic actions and failures to act constitute bad faith conduct towards SBG.

74. In all the instances set forth above, Trisura's persistent and systematic actions and failures to act were done purposefully, intentionally, and/or recklessly.

75. Trisura's conduct as described above constitutes bad faith prohibited by 42 Pa. Cons. Stat. § 8371.

76. Trisura has repeatedly violated and continues to violate the Pennsylvania Unfair Insurance Practices Act, 40 Pa. Cons. Stat. §§ 1171.1 *et seq*, and the regulations promulgated

under that Act.

77. As a result of Trisura's bad faith actions, SBG has suffered, and will continue to suffer, substantial direct and consequential damages.

78. As a result, Trisura is liable for compensatory damages, consequential damages, interest, attorneys' fees and costs, and punitive damages pursuant to 42 Pa. Cons. Stat. Ann. § 8371 and Pennsylvania common law, including but limited to, the law as set forth in *Birth Centers v. St. Paul*, 567 Pa. 386, 787 A.2d 376 (2011).

WHEREFORE, SBG demands judgment in its favor as to Count II as follows:

a) The entry of judgment in excess of $75,000 requiring Trisura to pay to SBG all monetary damages suffered by SBG caused by Trisura's bad faith, including, without limitation, compensatory damages, consequential damages, prejudgment interest, post-judgment interest, and attorneys' fees and costs;

b) The award of punitive damages in an amount in excess of $75,000; and

c) The award of such additional relief as the Court deems just and appropriate.

**FLASTER GREENBERG P.C.**

Dated: August 9, 2024         By:    */s/ Jay M. Levin*
Jay M. Levin
Meghan K. Finnerty
PA Attorney ID: 34561/202950
One Tower Bridge
100 Front Street, Suite 100
Conshohocken, PA 19428
T: 215.546.4842

Jennifer D. Katz
PA Attorney ID: 330063
1810 Chapel Ave. West
Cherry Hill, NJ 08002
T: 856.661.2260

*Attorneys for Plaintiff*
*SBG Management Services, Inc. and Lindley Tower Realty Co., LP*